United States
v.          } RIGHTS OF CITIZENSHIP.
*Gillies.*

Whether a native citizen of the United States, who resides in a
foreign country, does not, by such residence, forfeit his citizen-
ship? Such a person may, under the act passed 31st December,
1792, command a registered vessel of the United States, without
her right to the payment of domestic duties being affected there-
by; but under the same act, he cannot be the owner of a vessel
of the United States.
A citizen of the United States cannot throw off his allegiance, with-
out a law authorizing the same.
Any irregularities committed by the jury relative to their verdict,
ought to have been corrected in the court below, and they can-
not be examined by writ of error.

This was writ of error to the District Court.  The
only question in the court below, was, whether upon the
facts stated in the special verdict, the defendant's ves-
sel was liable to pay duties as a foreign bottom.  Ano-
ther error assigned, was, that the jury, after they were
sent out, separated without leave of the court, in conse-
quence of a deception they practised upon the officer,
by saying they had agreed on a verdict; when in truth

they had not done so. They afterwards assembled and found the verdict, upon which the judgment was rendered.

WASHINGTON, J. stopped the counsel, as to this point, by observing, that if there was any such irregularity in the conduct of the jury, as ought to have set aside their verdict, it was in the discretion of the court below, to act as was proper on the occasion; and that the decision of that court, upon this point, is not examinable by this court upon a writ of error or otherwise.

The question upon the merits was, whether the master of this vessel had forfeited his character of a citizen of the United States, and the privileges attached to it, under the act of Congress of the 31st December, 1792.*

The district attorney maintained the affirmative.

WASHINGTON, J. The court having disposed of the first error assigned in this record, I shall proceed to consider the only remaining question which has been discussed; this is, whether from the facts stated in the special verdict, John Shaw, master of the ship William P. Johnson, has forfeited his citizenship? If he has, then the judgment below must be reversed and entered in favour of the United States; otherwise it is to be affirmed.

It appears by the finding of the jury, that Shaw is a citizen of the United States, by birth, and resided therein up to the year 1804, with the exception of two years; that he was abroad from the year 1804, to the present year; whether in England or on the continent, or whether he was navigating the ocean, is not stated. It is found that he is married, and now has a family in Lon-

* 2 Laws United States, 313.

don ; but whether he married in England, or in the United States, or whether his family is residing in England, or is there merely on a visit, is not stated.   Upon such a case as this, it requires more ingenuity than I possess, to frame an argument to prove, that Shaw has not forfeited his privileges of a citizen of the United States. It would be like attempting to prove a self-evident proposition.

But taking for granted, that the case appeared to be such as the district attorney supposed it to be, and argued upon ; that is, that Shaw resided in England from the year 1804, to the year 1815, with his family, having married in that country ; I am yet to learn, that an American citizen forfeits that character, or the privileges attached to it, by residing and marrying in a foreign country ; though, during a part of the time, war should intervene, between that and his native country, he taking no part therein ; unless such character or privileges should be impaired, by some law of his own country.   I do not mean to moot the question of expatriation, founded on the self-will of a citizen, because it is entirely beside the case before the court. It may suffice for the present to say, that I must be more enlightened upon this subject than I have yet been, before I can admit, that a citizen of the United States can throw off his allegiance to his country, without some law authorizing him to do so.

It is true, that a man may obtain a foreign domicil, which will impress upon him a national character for commercial purposes, and may expose his property, found upon the ocean, to all the consequences of his new character ; in like manner, as if he were, in fact, a subject of the government under which he resides.

But he does not, on this account, lose his original charac-
ter, or cease to be a subject or citizen of the country
where he was born, and to which his perpetual allegi-
ance is due. The present case presents no question
connected with the subject of domicil, but, turns, alto-
gether, upon the construction of a law relative to the
navigation system of the United States.

The question, which the case I am supposing suggests
is, does an American bottom, lose her privileges as such,
on account of the master residing with his family in a
foreign country, he being by birth a citizen of the Uni-
ted States? Let the act of Congress made upon this sub-
ject, answer the question. It declares, that registered
vessels of the United States, shall not continue to enjoy
the benefits and privileges bestowed upon such vessels,
longer than they shall continue to be wholly owned and
to be commanded by a citizen of the United States.
The second section of the law, however, declares that
such registered vessel shall cease to enjoy the benefits
thereof, if owned in whole or in part, by a citizen of the
United States, who *usually resides* in a foreign country,
during the continuance of such residence; unless under
certain exceptions. But in respect to the master, no
such qualification is to be found in this law, or in any
part of our navigation system. Had this latter provision
not been made, in relation to the owner, I cannot per-
ceive upon what principle, the court could have supplied
it by construction; but being made by the legislature, it
marks the intention of that body, to distinguish between
the foreign residence of the owner, and that of the mas-
ter; and it farther proves the sense of congres, as to
residence abroad, that it does not, without legislative
provision, affect the character or privileges of a citizen.

PENNSYL'A.    There is a sound reason for the distinction which the
1815.    legislature seems to have had in view.   The profits of
United States    trade, necessarily incorporate themselves with the wealth
v.    of the nation where the trade is carried on; and these
Gillies.    profits are increased, as the duties upon the trade is di-
minished.   The policy, therefore, which dictates dis-
criminating duties, to favour our own merchants, would
point out the necessity of applying the system, as well
to citizens of the United States, settled abroad, as to
other merchants; but the same policy is not applicable
to the master of the vessel.   If the owner of the vessel
which he employs, resides within the United States, it is
immaterial where the master resides.   It is only neces-
sary, that he should be a citizen of the United States.

*Judgment Affirmed.*